FILED
SEP 27 2005

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| EUGENE PAULSON, et al., | \* | CIV 05-1035 |
| | \* | |
| Plaintiffs, | \* | |
| | \* | |
| -vs- | \* | ORDER AND OPINION |
| | \* | |
| VICTOR TOWNSHIP, et al., | \* | |
| | \* | |
| Defendants. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff has filed a complaint against numerous defendants. He has also filed numerous other documents by way of legal argument. I have read all documents now on file.

Plaintiff makes some mention in his complaint, at least by implication, of seeking a declaratory judgment holding that various state court judgments are void. 28 U.S.C. § 2201 provides, *inter alia*: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." (emphasis supplied). The Act does not grant litigants an absolute right to a legal determination. Wilton v. Seven Falls Co., 515 U.S. 277, 115 S.Ct. 2137 (1995). The question whether to grant declaratory relief rests within a district court's discretion and depends on whether the judgment might serve a useful purpose in clarifying and settling the legal relations at issue and would constitute a practical and wise administration of justice. Wilton, supra. *See also* Aetna Casualty and Surety Co. v. Jefferson Trust and Savings Bank, 992 F.2d 1364 (8th Cir. 1993). It is well known in any event that the declaratory judgment statute does not grant federal jurisdiction. The statute itself leads off with the requirement that the case be a matter of "actual controversy within its jurisdiction . . ." (emphasis supplied). *See also* Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983). This is not a case within the jurisdiction of the court, as will more fully appear. Even if it were, the court would decline to enter a declaratory judgment since the same would not constitute a practical and wise administration of justice.

Plaintiff alleges in the complaint that each defendant is an "enemy of the constitution" operating under color of South Dakota law. He alleges, in part, that diversity of citizenship

exists. It is obvious that diversity does not exist between plaintiff and all defendants, as is required for a party to proceed under diversity of citizenship. In fact, there is no diversity between plaintiff and almost all the defendants. Therefore, the Court has no jurisdiction based on diversity of citizenship.

Plaintiff alleges in his complaint a plethora of other items. He questions the sufficiency of the evidence in a trial to a South Dakota state court judge, claims he was entitled to a building permit from Roberts County, South Dakota, and claims he was entitled to the vacation of a public street. He alleges that he sued the defendant township in state court, that the township did nothing although they had the authority under South Dakota law to vacate streets, that the township and its officials committed fraud which has been admitted in "another court proceeding", that the township and its officials refused to pass title to a certain street or streets to plaintiff's corporation, and that plaintiff and his corporation filed a suit in 2002 in state court in Roberts County, South Dakota. Plaintiff alleges that a state court judge should have allowed plaintiff to "properly start" his lawsuit, that the defendants in that state court lawsuit sought and obtained a summary judgment from a state court judge, that plaintiff and his corporation appealed to the South Dakota Supreme Court, apparently lost, sought a rehearing which was denied, and were then ordered by the South Dakota Supreme Court to file nothing further by way of frivolous pleadings.

Plaintiff next alleges that he and the corporation in which plaintiff holds a majority of the stock were sued for unpaid rent, that they obtained a lawyer who filed an answer and a counterclaim, that defendant Mars has treated others unfairly, that plaintiff assumed the state court legal system was "just and honest", and that he had other rights in the state courts which he wishes to have vindicated in federal court.

He alleges that an unknown thief stole a computer with business records of the named corporation in the computer hard drive.

He alleges that a state court judge erroneously ordered production of business records, that an attorney had ex parte and improper discussions with the judge, that the judge ordered plaintiff and his wife to be imprisoned for failure to produce the records, and that plaintiff and his wife appealed to the South Dakota Supreme Court which ruled that the trial court had no jurisdiction. Plaintiff seeks monetary damages from the judge, the attorney, and Allen Wold, claiming pain and suffering for himself and his wife. There is no allegation that plaintiff's wife

is a party or that anyone served any time in jail. Obviously, plaintiff cannot assert any claims his wife may have or claim to have.

Plaintiff makes reference to another state court action in Roberts County and now alleges that the state court judge made improper rulings, acted in violation of the Uniform Commercial Code, and wrongfully awarded damages against plaintiff. He alleges he filed an appeal to the South Dakota Supreme Court and that such court reversed and remanded the case to Judge Flemmer.

He attempts to question a dispute between defendant Mars and the Denver Stock Show and claims the Surface Transportation Board ("STB") should have ruled on that dispute as well as plaintiff's disputes with Mars. He challenges the abolition of the Interstate Commerce Commission by Congress and the replacement by the STB.

He challenges a later order by Judge Flemmer allowing the garnishment of plaintiff's bank account. He claims he filed a complaint with the South Dakota Bar (more correctly, the Disciplinary Board of the State Bar of South Dakota) and the Judicial Qualifications Board, both of whom found no fault on the part of the respondents. He next applied to the South Dakota Supreme Court for a writ of mandamus which was denied. He makes numerous scandalous and impertinent allegations, including claims that the South Dakota Supreme Court and virtually every state court judge in this part of South Dakota were involved in extortion and criminal enterprises.

He attacks a judgment by Judge Flemmer denying his motion to dismiss and dismissing his counterclaim. As previously stated, he alleges that the South Dakota Supreme Court ordered him to cease his submissions of frivolous documents. The Supreme Court has an absolute legal right to issue and enforce such an order. He alleges mismanagement of the state court system and the adoption of a claimed unconstitutional rule, SDCL 15-26A-87.1, by the Supreme Court. He then alleges that he abandoned efforts to appeal the orders of Judge Flemmer. Such orders and judgments are, therefore, final orders not subject to collateral attack.

He alleges that Mars and his attorneys were filing frivolous lawsuits. If so, the proper remedy was to ask the state judges to sanction them under Rule 11.

He alleges that defendant attorney Niven (who was never representing plaintiff) lied to him about legal rights in connection with a decision by Chief United States District Judge

3

Piersol, a decision which was on appeal to the United States Court of Appeals for the Eighth Circuit. The Court of Appeals affirmed in part and reversed in part.

He next alleges that an eminent domain proceeding was brought against plaintiff Paulson and his wife, that they did not timely answer the complaint, that a motion for a default judgment was granted, that a jury was convened to determine the compensation to be paid, that Paulson refused to participate in the trial because of claimed irregularities by the judge, that the jury determined the damages for the taking at $4,200.00, that Paulson was ordered to transfer title to the condemned property, and that Paulson filed a notice of appeal to the South Dakota Supreme Court and apparently received no relief.

He alleges the filing of another action in state court, that the corporation was found in default, that he filed an intermediate appeal which was denied by the Supreme Court, and that nothing further has been done by the trial court. Thus, such action is still pending in state court.

He next challenges an action brought in state court against plaintiff and his wife by Kevin Larson, states that the judge wasted plaintiff's time during a hearing, and apparently alleges that such action is still pending.

He next challenges a letter sent by the Roberts' County States' Attorney on behalf of the County Commissioners, instructing plaintiff to cease blocking a street.

He complains about failure of the county and the director of equalization to adjust real estate taxes for the corporation and claims that the property is over-assessed. He alleges that he declines to appeal any assessment, fearing the unfairness of Judge Flemmer.

He also complains about the refusal of the Roberts County Commissioners to grant him a variance.

He claims a surveyor had a conflict of interest.

He claims that he has incurred damages from the flooding of a building.

He challenges a Roberts County decision, the results of a referendum election by which a new jail will be constructed, and legal advice given by bond counsel for the county.

He next moves into RICO allegations. He alleges that Governor Rounds and attorney William Niven are members of the "South Dakota legislative branch." Obviously, that is not true. Both are in the executive branch. He continues with more scandalous and impertinent allegations, claiming that the defendants have committed treason against the United States and have violated various criminal statutes. His conclusory allegations of "enemies of the

4

constitution" are defamatory and entitled to no legal consideration. He seeks damages of more than $10 million from the defendants. He seeks to quiet title to real estate. He seeks an injunction against Roberts County collecting real estate taxes which plaintiff claims are excessive. He seeks to enjoin the issuance of bonds to construct the new county jail, to prevent the South Dakota Supreme Court from acting pursuant to its rules of procedure, and to have the federal court declare that various state court judgments are void. He later claims in a document (Doc. 43, page 6) that his complaints "do not relate to the South Dakota Courts (sic) orders but only to there (sic) conduct in arriving at them." He nevertheless claims that the judgments are "void" and claims that to vacate them would not require a review of the cases. *Id.*

He also challenges the rule of law in South Dakota that does not permit a corporation to be represented in court by a person not admitted to practice law. That is the rule and he does not like it. He seeks to subvert the rule in the present case by claiming that all claims of the corporation have been assigned to him. There is, however, no need in the present case to deal with such claims, other than to dismiss them.

Plaintiff also seeks to proceed under 42 U.S.C. § 1983. In the civil cover sheet, however, he cites 18 U.S.C. §1961 ("RICO" claims) and claims to be seeking to recover for fraud and "constitutional issues." Plaintiff cites Monroe v. Pape, 365 U.S. 167 (1961), a case that is, of course, very familiar to the court. This case does not deal with the question of the application of the Rooker-Feldman doctrine, a doctrine that will be discussed.

"Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Marine Equip. Management Co. v. U.S., 4 F.3d 643, 646 (8th Cir. 1993) (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, 106 S. Ct. 1326, 1331, 89 L. Ed. 2d 501, (1986) (citing Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L. Ed. 60 (1803)). "The threshold inquiry in every federal case is whether the court has jurisdiction" and the Eighth Circuit has "admonished district judges to be attentive to a satisfaction of jurisdictional requirements in all cases." Rock Island Millwork Co. v. Hedges-Gough Lumber Co., 337 F.2d 24, 26-27 (8th Cir. 1964); *accord* Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987).

"Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide." Osborne v. United States, 918 F.2d 724, 729 (8th Cir. 1990) (citing Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)). "Moreover, because jurisdiction is a threshold

5

question, judicial economy demands that the issue be decided at the outset rather than deferring it until trial . . ." Osborne, 918 F.2d at 729.

The Rooker-Feldman (Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983)), doctrine forecloses indirect attempts to undermine state court decisions. Likewise, a federal constitutional claim, e.g. under 42 U.S.C. §§ 1983 and 1985(3) and 18 U.S.C. § 1964(a), is "inextricably intertwined" with a state court judgment if the federal claim could succeed only to the extent that the state court wrongfully decided the issue before it. The doctrine applies even though a party to the federal action was not a party in the state court action. *See* Lemonds v. St. Louis County, 222 F.3d 488, 492-95 (8th Cir. 2000). The doctrine applies to claims for injunctive and declaratory relief, as well. Keene Corp. v. Cass, 908 F.2d 293, 297 (8th Cir. 1990). It is clear beyond doubt that the claims of plaintiff and the corporation are "inextricably intertwined" with past actions filed in state court and with pending actions in state court. Plaintiff "cannot be allowed to escape *Rooker-Feldman* by raising a new constitutional theory in federal court." Lemonds, 222 F.3d at 494 (quoting from Valenti v. Mitchell, 962 F.2d 288, 296 (3rd Cir. 1992)). Likewise, plaintiff cannot escape Rooker-Feldman by artful pleading alleging federal statutory remedies.

The doctrine interprets 28 U.S.C. §1257 to deprive lower federal courts of jurisdiction to hear challenges to state court judgments except in habeas corpus proceedings and this applies to state proceedings that are essentially judicial in nature. Feldman, 460 U.S. at 476. *See also* Ballinger v. Culotta, 322 F.3d 546, 548 (8th Cir. 2003). Even claims which could have been raised in the state court proceedings but were not raised are barred since otherwise the federal court "is in essence being called upon to review a state court decision." Feldman, 460 U.S., at 482 n.16. *See also* Mosby v. Ligon, et al., 418 F.3d 927 (8th Cir. 2005). Thus, plaintiff's contentions that there was an "unconscionable contract which was not brought up in state court and the issue of contractual fraud . . . not addressed in state court" and that there was lack of personal jurisdiction in state court have no legal merit and may not be addressed in this action.

Plaintiff attempts, at least in part, to proceed under Fed.R.Civ.P. 60 but cannot do so as a matter of law. Such rule applies only to federal court judgments. There is no federal court judgment to which the rule can be considered. It cannot be used to attack a state court judgment. In South Dakota, a party has the absolute right to timely appeal to the South Dakota Supreme Court from any final judgment of a state circuit court. Appeal from a state trial court in South

Dakota is a matter of right. A losing party in the South Dakota Supreme Court has only one "shot" left and that is to seek a writ of certiorari from the United States Supreme Court. Plaintiff did not do this.

This court has no jurisdiction over the subject matter of this lawsuit. A federal district court is not a court of appeals from state court judgments. This court lacks subject matter jurisdiction as to challenges to state court judgments not involving the right to a writ of habeas corpus. Lemonds, 222 F.3d at 492. Lacking subject matter jurisdiction, it is immaterial whether personal jurisdiction may exist over the named defendants. There being no subject matter jurisdiction, there is no authority for this court to enter any judgment other than a judgment of dismissal. There is no legal authority for the court to enter a default judgment as to defendants who have failed to answer the complaint. The parties and the court cannot waive or stipulate to jurisdiction over the subject matter. The court does not pass on the question of whether there was insufficient service of process or some other defect that would prevent the court from acquiring personal jurisdiction over any particular defendant. The questions of personal jurisdiction have no relevance in this case.

As to allegations contained in paragraphs 121-161 and 414(a)-473, all such claims would also be barred by the doctrine of res judicata. I will also not interfere with at least one pending case in state court, Sunflour Railroad, Inc. v. Roberts County, Eugene Paulson, and Heartland Organic Foods, Inc., Civ. 03-0146, Fifth Judicial Circuit, Roberts County, South Dakota. In Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L. Ed. 2d 669 (1971), the Supreme Court held that federal courts may not enjoin pending state court criminal proceedings except in extraordinary circumstances. *Id.* at 43-45. The reasoning focused heavily on the notion of comity, "that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways." *Id.* at 44. Later, the Younger doctrine was expanded to "prohibit federal courts from interfering in certain pending state civil cases as well as pending state administrative proceedings which are judicial (as opposed to legislative) in nature." Night Clubs, Inc. v. City of Fort Smith, Ark., 163 F.3d 475, 479 (8th Cir.1998) (citing Huffman v. Pursue, Ltd., 420 U.S. 592, 603-07, 95 S. Ct. 1200, 43 L. Ed. 2d 482 (1975), Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 627, 106 S. Ct. 2718, 91 L. Ed. 2d 512

(1986), and Middlesex Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431-32, 102 S. Ct. 2525, 73 L. Ed. 2d 116 (1982)).

A federal court should abstain from hearing a case "(1) when there is an ongoing state judicial proceeding which (2) implicates important state interests, and when (3) that proceeding affords an adequate opportunity to raise the federal questions presented." Fuller v. Ulland, 76 F.3d 957, 959 (8th Cir. 1996) (citing Younger, 401 U.S. 37). "'[S]o long as a possibility of return to federal court remains, a stay rather than a dismissal is the preferred mode of abstention.'" *Id.* at 960-61 (citing Wilton v. Seven Falls Co., 515 U.S. 277, 288, 115 S. Ct. 2137, 2143 n.2, 132 L. Ed. 2d 214 (1995)). Here, there is no possibility of the issues raised by plaintiff returning to federal court. Thus, a dismissal rather than a stay is the preferred mode of abstention. The court fully recognizes that the plaintiff makes claims of bad faith and harassment by defendants. These are nothing but broad conclusions without any possible foundation. They are based solely on the fact that plaintiff and his corporation went into state court on several occasions and did not prevail.

The claims of plaintiff against public officials are also barred by the principles of sovereign immunity and by the Eleventh Amendment to the U.S. Constitution which provides, *inter alia*, that:

> [t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The immunity provided by the Eleventh Amendment extends to suits in federal court by a state's own citizens. Edelman v. Jordan, 415 U.S. 651, 662-663, 94 S. Ct. 1347, 1355, 39 L. Ed. 2d 662 (1974). Eleventh Amendment immunity extends to suits for monetary damages, as well as those for declaratory or injunctive relief, subject, of course, to the exception provided by *Ex parte* Young, 209 U.S. 123 (1908). *In re* SDDS, Inc., 97 F.3d 1030, 1035 (8th Cir. 1996). There is no question that almost all the defendants have acted as "arms" of the State and are to be treated as though they are the State itself, thus entitled to the full protection set forth in the Eleventh Amendment. *See* Puerto Rico Aqueduct and Sewer Authority v. Metcalf and Eddy, Inc., 506 U.S. 139, 144 (1993), and Regents of the University of California v. Doe, 519 U.S. 425, 429-30 (1997). The exception provided by *Ex parte* Young has no application here. Plaintiff seeks recovery of monetary damages and other relief for past actions taken in state courts by

8

public officials and officers of the court. This he may not do. What is sought here would be an enormous affront to the State of South Dakota and its public officials, in violation of the Eleventh Amendment.

It is not necessary to address questions as to judicial immunity which would shield all justices, judges, and officers of the court from liability in this action.

In addition, the complaint fails to state a cause of action upon which relief may be granted. See Fed.R.Civ.P. 12(b)(6).

Now, therefore,

IT IS ORDERED, ADJUDGED, AND DECREED, *sua sponte*, as follows:

1) The motion (Doc. 23) for default judgment and all other requests for a default judgment are denied as moot, this court having no jurisdiction over the subject matter of this action.

2) The motion to dismiss (Doc. 39) is denied as moot as is the request for oral argument.

3) This action is dismissed for lack of jurisdiction over the subject matter.

4) Costs are to be taxed.

5) The Clerk shall not accept for filing any further pleadings or documents (other than a notice of appeal and related documents) from plaintiff without advance written approval of the Court.

Dated this 27th day of September, 2005.

BY THE COURT:

*[signature]*
CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY *[signature]*
       DEPUTY
(SEAL)

9